IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00733-PAB-BNB

SERVERSIDE GROUP LIMITED and
SERVERSIDE GRAPHICS, INC.,

      Plaintiffs,

v.

CPI CARD GROUP-COLORADO, INC.;
THE MEMBERS GROUP, INC.;
PSCU FINANCIAL SERVICES, INC.;
NEIGHBORS CREDIT UNION; and
ANHEUSER BUSCH EMPLOYEES CREDIT UNION,

      Defendants.

---

**LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
PURSUANT TO THE HAGUE CONVENTION ON THE TAKING OF EVIDENCE
ABROAD IN CIVIL OR COMMERCIAL MATTERS**

---

To the Central Authority for England, United Kingdom:

      In conformity with the Hague Convention of March 18, 1970, on the Taking of

Evidence in Civil or Commercial Matters (hereinafter "Hague Convention"), the United States

District Court for the District of Colorado, Alfred A. Arraj United States Courthouse A841 /

Courtroom A801, Denver, Colorado 80294, United States of America, presents its compliments

to the High Court, Queen's Bench Division, Royal Courts of Justice, Strand, London WC2A

2LL, England, United Kingdom, and has the honor of requesting its assistance in obtaining

relevant and admissible evidence to be used in a civil patent infringement proceeding now

pending before this court in the above-captioned matter.

1.    The parties to the civil action pending in the United States District Court for the District of Colorado are:

    a.    Plaintiffs Serverside Group Limited ("SGL") and Serverside Graphics, Inc. ("SGI").  SGL is incorporated in England and has a  principal place of business at 16 Kingly Street, London, W1B 5PT United Kingdom.  SGI is incorporated in the State of New York, in the United States, and has a principal place of business at 37 West 20th Street, Suite 809, New York, NY 10011.  The plaintiffs are represented by Wolf, Greenfield & Sacks, P.C, 600 Atlantic Ave., Boston, MA 02210.

    b.    Defendants CPI Card Group-Colorado, Inc., The Members Group, Inc., PCSU Financial Services, Inc., Neighbors Credit Union, and Anheuser Busch Employees Credit Union.  The principal defendant, CPI Card Group-Colorado, Inc., is incorporated in the State of Colorado, in the United States, and has a principal place of business at 10368 West Centennial Road, Littleton, CO 80127. The remaining defendants are CPI's customers and reside in Florida, Iowa, and Missouri.  The defendants are represented by Winston & Strawn LLP, 101 California Street Suite 3900, San Francisco, CA 94111.  For purpose of the present Letter of Request, the defendants also are represented by Winston & Strawn London, City Point, 1 Ropemaker Street, London EC2Y 9HU, United Kingdom (Tel: +44(0)20 7011 8700; Fax: +44(0)20 7011 8800).

2.    The evidence to be obtained, described in detail below, consists of documentary and testimony from the following individuals believed to be present in the United Kingdom:

Adam Elgar

Suite 1-4 Suffolk House
263 Banbury Road
Oxford
Oxfordshire
England
OX2 7HN

Tom Elgar
Suite 1-4 Suffolk House
263 Banbury Road
Oxford
Oxfordshire
England
OX2 7HN

**Nature and purpose of the proceeding(s) for which the evidence is required**

3.     On June 22, 2011, plaintiffs SGL and SGI sued defendants for patent infringement in the United States District Court for the District of Delaware.  The case was subsequently transferred to the District of Colorado for jurisdictional reasons.

4.     The patents in suit, United States Patent Numbers 7,946,490 and 7,931,199, claim particular equipment for manufacturing a credit card bearing a customized image.  Defendants contend that they do not infringe either patent, and that in any event both patents are invalid. Attached hereto as Exhibits A and B respectively are true and correct copies of plaintiffs' infringement contentions and defendants' invalidity contentions.

5.     SGL is alleged to own the entire right, title, and interest in the patents in suit.  SGI is alleged to have an exclusive license with SGL to make, use, sell, and offer-for-sale in the United States the inventions claimed in the patents in suit.

6.     Adam Elgar and Tom Elgar are the co-inventors on the face of both patents and, until recently, were the co-owners and managers of both SGL and SGI.  However, at some point

toward the end of 2011 or the beginning of 2012, the Elgars sold SGL and SGI to Gemalto, Inc. It is defendants' understanding that the Elgars have no continuing contractual relationship with SGL, SGI, or Gemalto, despite the fact that SGL and SGI are continuing to assert patents issued in the Elgars' names.

7.      As inventors, the Elgars have evidence that is likely to be helpful in determining certain issues at trial.  Specifically:

     a.  Plaintiffs contend in this lawsuit that both patents are entitled to a priority date of February 18, 2003, but the defendants allege, based on the United States Patent & Trademark Office file history of both patents, that the inventors did not invent or reduce the inventions claimed in the patents to practice until much later, perhaps as late as 2008.  *See* Ex. A § 5 (Priority Dates).  Ascertaining whether or not the patents are entitled to the claimed priority date will be important for this Court's assessment of the validity of the patents at the trial of these proceedings.  The inventors have specific evidence of fact regarding their research and development efforts, and the dates on which they invented and reduced the invention to practice, evidence that is pertinent to establishing whether the patents in suit are entitled to their claimed priority date and which is not otherwise available from other sources.[1]

     b.  United States patent law requires an inventor to set forth, in a patent's specification, "the best mode contemplated by the inventor of carrying out his invention."  Defendants allege that the inventors did not fulfill this requirement,

---

[1] On July 20, 2012, Plaintiffs were obligated to produce any documents they have in their possession "evidencing the conception, reduction to practice, design, and development of each claimed invention" before the February 18, 2003 priority date, but did not produce any such documents, suggesting that they do not have these documents in their possession and forcing defendants to seek such evidence from other sources.

and in order to support their defense, the defendants will need the inventors to testify as to the best mode of practicing the claimed invention at the time of the patent application. *See* Ex. B p. 13.

c. Understanding the meaning of patent claim terms will be critical to the assessment by this Court of issues of infringement and validity. Under United States patent law, intrinsic evidence (the claim language, the patent specification, and the file history) is the most relevant evidence to determining the meaning of claim terms, as those terms would be understood by a person of ordinary skill in the art at the time of application. However, the inventors are familiar with the claim terms and can provide an expert opinion as to the specific meaning that a claim term has in a particular field. Indeed, as the inventors, they are uniquely situated to say what they intended with the words they used.

d. United States patent law requires an inventor to set forth, in a patent's specification, "a written description of the invention," and "the manner and process of making and using it . . . to enable any person skilled in the art to . . . make and use the same." Defendants allege that the inventors did not fulfill this requirement, and in order to support their defense, the defendants will need the inventors to testify as to the scope of the claimed invention at the time of the patent application to determine if the written description is sufficient, and if the disclosure is truly enabling. See Ex. B p. 13.

8.     Thus, the Elgars have evidence that is likely to be both relevant and admissible at trial as to certain specific issues in this case. Defendants do not seek an exploratory deposition of information that is readily available from other sources (such as public prior art references, or

5

the state of the art at the time of application), but instead seek documentary and testimonial evidence that is relevant and uniquely in the inventors' possession.

9.     There is specific evidence in this case that shows that the Elgars are likely in possession of unique evidence not readily available from other sources.  According to the Plaintiff Serverside, the Elgars are the "inventors" of the patents at issue in this case and both have "knowledge of the inventions claimed in [the patents] ... and design, research, development, evaluation, and/or testing of embodiments of the inventions." (Attached hereto as Exhibit C is a true and correct copy of Serverside's Answers to First Set of Interrogatories (Nos. 1-7), p. 3, Answer 1.)  Further, according to the Plaintiff Serverside, the "priority date for the patents is almost ten years ago," thus "additional relevant documents would likely be a decade or more old, which combined with the inventors leaving Serverside means that such documents may no longer exist or no longer be in Serverside's possession." (Attached hereto as Exhibit D is a true and correct copy of an October 11, 2012 letter from Plaintiff's counsel to defense counsel, p. 2, ¶ 2 (emphasis added).)  The Elgars are the only persons who may have the information and evidence that the Defendant seeks, because they are the only persons who were privy to any facts that might be relevant to this case, which occurred prior to the Plaintiff's alleged priority date. Moreover, the Elgars are the only people who may be in possession of relevant documents, or might know where such documents might be found.  Accordingly, Defendants are not seeking exploratory deposition of information that is readily available from other sources, but are targeting their discovery to the two people who are likely in unique possession of highly relevant evidence.

**The evidence to be obtained**

10.    The evidence to be obtained is oral testimony and the production of certain specific documents to be used as evidence in the trial of this matter.

11.    The evidence to be obtained consists of the following:

    a.  certain documents in the possession of Adam Elgar or Tom Elgar, which are described in Attachment 1 hereto; and

    b.  testimony by Adam Elgar and Tom Elgar regarding: the conception and reduction to practice of the inventions claimed in the '490 and '199 patents; the best mode of practicing the invention claimed in those patents; any specific meanings that the claims of the patent have in the field of personalized financial transaction card software and equipment.

12.    The testimonial evidence is required to be given on oath or affirmation.  It is also hereby requested that the testimony be in the form of a deposition upon questions put to the witness by counsel.   In addition to the presence of counsel, it is also requested that a stenographer be present to take a verbatim transcript of all testimony and proceedings in English and that the transcript of the testimony be authenticated.  It is also requested that the witness sign the transcript of his testimony and that the signed, transcribed testimony together with any documents marked as exhibits be transmitted to defendants' representative at the examinations or as soon as possible thereafter.  Unless the appointed Examiner before whom such proceedings shall be conducted would prefer otherwise, one or both of the parties shall arrange for the presence of the stenographer.

13.    The documentary and testimonial evidence is relevant to the pending proceeding and will assist this Court in resolving the dispute presented in the civil action before it.

14.     Accordingly, it is hereby requested that, in the interest of justice, you cause by your usual and proper process such orders to be entered as United Kingdom law permits requiring Adam Elgar and Tom Elgar to produce those documents identified in Attachment 1 hereto, and to transmit such documents to counsel for defendants for further production in the action at a time and place to be determined by you or the appointed Examiner.  It is also hereby requested that, in the interest of justice, you cause by your usual and proper process such orders to be entered as United Kingdom law permits requiring Adam Elgar and Tom Elgar to appear and to answer questions under oath or affirmation at a deposition upon questions to be posed by counsel at a time and place to be determined by you or by the appointed Examiner, and that a verbatim transcript be prepared.  It is also requested that you inform this Court and the parties through their above-mentioned legal counsel of all relevant dates and times determined by you for the production of the aforementioned evidence.

15.     It is respectfully requested that the decision of the Senior Master of the Supreme Court be served on English counsel for defendants:

> Philip Carey
> Winston & Strawn London
> City Point
> 1 Ropemaker Street
> London EC2Y 9HU
> United Kingdom

16.     This Court expresses its appreciation to the United Kingdom Government for its courtesy and assistance in this matter and states that this Court shall be ready and willing to assist the courts of the United Kingdom in a similar manner when required.  This Court is also willing to reimburse (through defendants) the appropriate judicial authorities of the United Kingdom for any special costs pursuant to Articles 9 and 14 of the Hague Convention.

8

Dated: November 7, 2012

The Honorable Boyd N. Boland
United States Magistrate Judge
United States District Court
District of Colorado
Denver, Colorado, U.S.A.

## ATTACHMENT 1

1.      Documents in the possession of Adam Elgar or Tom Elgar concerning the research and development, conception, and reduction to practice of the inventions claimed in United States Patent Numbers 7,946,490 and 7,931,199, including:

Laboratory or research notebooks showing conception and development of the invention claimed in the patents in suit;

Prototypes, flowcharts, and schematics of the equipments and systems claimed in the patents in suit;

Source or object code of any implementations of the invention claimed in the patents;

Communications or correspondence amongst the Elgars concerning (a) the conception and reduction to practice of, and (b) any efforts to sell, value, or otherwise monetize, the inventions claimed in the patents in suit;

Documents reflecting the Elgars' past and current relationships with SGL, SGI, and Gemalto;

Contracts and communications with any third parties utilized to develop any portion of the inventions embodied in the patents in suit;

Documents reflecting any sale, offer to sell, public use of, or disclosure to a third party of the inventions embodied in the patents in suit, before February 18, 2003.

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00733-PAB

SERVERSIDE GROUP LIMITED, and
SERVERSIDE GRAPHICS, INC.,

      Plaintiffs,

v.

CPI CARD GROUP-COLORADO, INC.,
THE MEMBERS GROUP, INC.,
NEIGHBORS CREDIT UNION,
PSCU FINANCIAL SERVICES, INC., and
ANHEUSER BUSCH EMPLOYEES CREDIT UNION,

      Defendants.

---

## PLAINTIFFS' AMENDED PRELIMINARY INFRINGEMENT CONTENTIONS

---

Pursuant to Section 9 of the Revised Scheduling Order (D.I. 47 at 9) and the agreement of the parties, Plaintiffs, Serverside Group Limited, and Serverside Graphics, Inc. (collectively, "Serverside"), serve these Amended Preliminary Infringement Contentions on Defendants, CPI Card Group-Colorado, Inc. ("CPI Colorado"), The Members Group, Inc. ("TMG"), PSCU Financial Services, Inc. ("PSCU"), Neighbors Credit Union ("Neighbors"), and Anheuser Busch Employees Credit Union ("ABECU") (collectively, "Defendants).

## I.    ASSERTED CLAIMS

Based on the information currently available to it, Serverside asserts that Defendants infringe at least the following claims (the "Asserted Claims") of United States Patent Nos. 7,931,199 B2 (the "'199 patent") and 7,946,490 B2 (the "'490 patent") (collectively, the "Asserted Patents"):

1

| Patent | Claims |
|---|---|
| '199 patent | 1, 2, 9, 14-16, 18, 22, 25, 29, 30 |
| '490 patent | 1, 2, 9, 14-16, 18, 22, 25, 29-31 |

Serverside reserves the right to assert additional claims of the Asserted Patents against Defendants based on information obtained during discovery.

## II.     ACCUSED PRODUCTS AND INSTRUMENTALITIES

Serverside accuses at least the following products or instrumentalities of Defendants (the "Accused Products") of infringing Serverside's Asserted Patents: Defendants' financial transaction card customization platforms, systems, products, or services, whether operated separately or together, including MYCA Card Customization Technology ("MYCA"), MyPhotoCard, Design Your Own Card ("DYOC"), and Picture My Card ("PMC").

Serverside reserves the right to, and will, supplement this list of Accused Products as Serverside gains knowledge of additional financial card customization platforms, systems, products, or services during the course of discovery.

Based on Defendants' representations, Serverside's current understanding is that CPI Colorado owns a card customization software platform called MYCA. (D.I. 47 at 3.) CPI Colorado licenses MYCA to its customer credit union service organizations, including TMG and PSCU. (Id.) Those organizations in turn offer MYCA-based services, under various brands such as DYOC and PMC, to their member credit unions, including Neighbors and ABECU. (Id.) Various members (e.g. employees) of these credit unions then use these services. (Id.)

In short, Serverside understands Defendants to represent that these card customization services, while involving different providers and marketed under different brands, are essentially the same service. These Amended Preliminary Infringement Contentions, and the attached claim

2818217.1

charts, therefore treat these different services as interchangeable, and all part of the same Accused Product. Serverside reserves the right to supplement or revise its contentions should it gain knowledge during the course of discovery that Defendants' representations are incorrect, that there are in fact any functional differences between the various implementations of the MYCA-based services, or that Defendants are offering any Accused Products separate from the MYCA-based services.

Defendants may allege that one or more of the Defendants does not control the Accused Products as a whole, or that the end-users of the system exercise such control and none of the Defendants do, or that no-one exercises such control over the Accused Products. If Defendants raise any such "joint infringement" or "divided infringement" defense, Serverside contends that it would fail. Serverside contends that at least CPI Colorado, and possibly one or more of the other Defendants, places the invention into service by controlling the system as a whole and obtaining benefit from it. See Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc., 631 F.3d 1279, 1284 (Fed. Cir. 2011); see also Akamai Techs., Inc. v. Limelight Networks, Inc., No. 2009-1372, slip op. (Fed. Cir. Aug. 31, 2012) (en banc).

Similarly, Defendants may allege that one or more of them does not directly infringe the Asserted Patents, either because direct infringement is accomplished by a different Defendant, or because the only possible direct infringers would be the end-users. If Defendants raise such a defense, and in addition to any response on the merits, Serverside contends that such Defendants would at the least be indirectly infringing the Asserted Patents. Such indirect infringement includes inducement and contributory infringement, with the predicate direct infringement being that of the other Defendant(s) or of the end-users. See 35 U.S.C. §§ 271(b), (c).

3

## III.    CLAIM CHARTS

Attached as Exhibits A and B are tables that set forth each limitation of each asserted claim, together with the features of the Accused Products that infringe each such limitation. Serverside reserves the right to supplement or otherwise modify these preliminary claim charts as additional information becomes available over the course of discovery.

## IV.    DOCTRINE OF EQUIVALENTS

Defendants have infringed each of the Asserted Claims literally and under the doctrine of equivalents. To the extent that any differences are alleged to exist between the Asserted Claims and the Accused Products, such differences are insubstantial. Defendants' products perform substantially the same functions, in substantially the same ways, to yield substantially the same results. Therefore, notwithstanding any mention or lack of mention of the doctrine of equivalents in the claim charts, Defendants infringe the Asserted Claims both literally and under the doctrine of equivalents.

## V.    PRIORITY DATES

The '199 patent is a continuation of application No. 12/132,516, filed Jun. 3, 2008, which is a continuation of application No. 10/545,833, filed as application No. PCT/GB2004/000626 on Feb. 17, 2004, which claims the benefit of U.S. Provisional Application Ser. No. 60/447,972, filed Feb. 18, 2003, and is a continuation-in-part of application No. 10/406,519, filed Apr. 3, 2003.

The '490 patent is a continuation of application No. 10/545,833, filed as application No. PCT/GB2004/000626 on Feb. 17, 2004, which claims the benefit of U.S. Provisional Application Ser. No. 60/447,972, filed Feb. 18, 2003, and is a continuation-in-part of application No. 10/406,519, filed Apr. 3, 2003.

2818217.1

Serverside alleges that each of the Asserted Claims are entitled to a priority date of February 18, 2003.

## VI.   PRACTICE OF THE CLAIMED INVENTION

Serverside products practicing the claimed invention include AllAboutMe™ and VirtualPortfolio™.

## VII.   WILLLFULNESS

Defendants have been willful in their infringement of the Asserted Patents. Defendants were placed on notice of U.S. Application Serial No. 10/545,833, of which the '199 and '490 patents are continuations, on or around April 4, 2008, when Michael Campbell of Serverside sent a letter to Ted Fisk, President & CEO of CPI Card Group. Relevant documents include SSCPI0004269-4273. As a result of this letter, Defendants were aware of the application to which the Asserted Patents claim priority in 2008. They therefore would have been aware of continuations to that application, such as the Asserted Patents, and would have been aware of the Asserted Patents at least as of their respective dates of issuance. They also knew of the Asserted Patents based on the filing of the original Complaint in the District of Delaware on June 22, 2011. (D.I. 2.) Despite this knowledge, Defendants have continued to make, use, sell, or offer to sell the Accused Products, despite having an objectively high likelihood of infringing the Asserted Patents, which are valid. In addition, this objectively-defined risk was either known, or was so obvious that it should have been known, to Defendants.

## VIII.   DOCUMENT PRODUCTION

To the extent that responsive, relevant, non-privileged, non-immune documents exist, Serverside has produced documents relevant to its infringement contentions. Documents include ones relevant to the Accused Products (SSCPI0000001-89, SSCPI0004181-4208), to file

5

histories of the Asserted Patents (SSCPI0000111-4180), to ownership of the Asserted Patents

(SSCPI0000090-110), and to Serverside's products (SSCPI0004209-4268).  Serverside reserves

the right to supplement this disclosure if, and as, warranted.


WOLF, GREENFIELD & SACKS, P.C.

Date: September 14, 2012

/s/ Hunter D. Keeton
Michael A. Albert
Hunter D. Keeton
600 Atlantic Avenue
Boston, MA  02210-22061
Phone: (617) 646-8000
Fax: (617) 646-8646
Email: malbert@wolfgreenfield.com
hkeeton@wolfgreenfield.com

*Attorneys for Plaintiffs, Serverside Group Limited
and Serverside Graphics, Inc.*


## CERTIFICATE OF SERVICE

I certify that on September 14, 2012, I caused the foregoing document and its exhibits to
be served via electronic means by email on counsel for Defendants.


/s/ Hunter D. Keeton
Hunter D. Keeton

6

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00733-PAB

SERVERSIDE GROUP LIMITED, and
SERVERSIDE GRAPHICS, INC.,

      Plaintiffs,

v.

CPI CARD GROUP-COLORADO, INC.,
THE MEMBERS GROUP, INC.,
NEIGHBORS CREDIT UNION,
PSCU FINANCIAL SERVICES, INC., and
ANHEUSER BUSCH EMPLOYEES CREDIT UNION,

      Defendants.

---

## DEFENDANTS' INVALIDITY CONTENTIONS

---

## I.     Introduction

Pursuant to the agreement of the parties, and the Revised Scheduling Order entered by this Court on July 18, 2012 (Dkt. 47) in this matter, CPI Card Group-Colorado, Inc., The Members Group, Inc., Neighbors Credit Union, PSCU Financial Services, Inc., and Anheuser Busch Employees Credit Union (collectively "Defendants"), serve these Invalidity Contentions, as well as an accompanying document production.

Plaintiffs Serverside Group Ltd. and Serverside Graphics, Inc., (collectively "Serverside" or "Plaintiffs") allege that Defendants infringe claims 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 of U.S. Patent No. 7,931,199, and claims 1, 2, 9, 14-16, 18, 22, 25, 29-31 of U.S. Patent No. 7,946,490 (collectively "the Asserted Claims").  These Invalidity Contentions demonstrate that each of these claims are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112.

These Invalidity Contentions are based on the Defendants' current knowledge and understanding of the Patents-in-Suit, the prior art, and Serverside's Infringement Contentions.  In addition, at present, Serverside's Infringement Contentions do not comply with the agreement of the parties and the Court's Revised Scheduling Order, as they fail to provide sufficient guidance for the Defendants to comprehend Serverside's interpretation of the Asserted Claims and Serverside's perceived scope of the Asserted Claims.  For example, Serverside's contentions fail to indicate structures for means-plus-function claim limitations in claims 25 and 30 of the '199 patent and claims 25, 30 and 31 of the '490 patent.  Accordingly, the Defendants cannot yet determine what prior art is relevant to each of the Patents-in-Suit.

In addition, Serverside has not yet provided its perceived meaning of any of the relevant terms in the Patents-in-Suit, either through its Infringement Contentions or otherwise.  Moreover, the Court has yet to issue a claim construction order for the Patents-in-Suit in this matter.

Discovery and Serverside's investigation of the invalidity of the Patents-in-Suit are ongoing in this matter. For example, the Defendants are continuing to investigate technology developed by Dider Printing, Citibank, J.P. Morgan Chase, Wells Fargo, and Bank of America. As a result, because Defendants' investigation regarding the invalidity of the Asserted Claims over prior art and other grounds of invalidity is not yet complete, certain defenses, including, for example, public use, on-sale bar under 35 U.S.C. § 102(b), derivation or inventorship under 35 U.S.C. §§ 102(f) and 102(g), double patenting, inequitable conduct, laches, and estoppel, may only become apparent as additional information becomes available. The Defendants offer these Invalidity Contentions in response to Serverside's Infringement Contentions and without any prejudice to any position it may ultimately take as to any claim construction issues. For the purposes of these Invalidity Contentions, the Defendants may adopt alternative claim construction positions in applying prior art to the Asserted Claims of the Patents-in-Suit. The Defendants' Invalidity Contentions are based on their present understanding of the Patents-in-Suit, their present understanding of Serverside's perceived scope of the Patents, and their present understanding of Serverside's perceived meaning of the relevant terms in each of the Patents-in-Suit.

The Defendants' Invalidity Contentions are based on Serverside's present Infringement Contentions, which lack sufficient evidentiary support; to the extent that Serverside provides documents and/or evidence in support of its Infringement Contentions, this may inform the Defendants as to Serverside's construction of relevant terms and/or perceived scope of the Patents-in-Suit. Accordingly, the Defendants reserve the right to supplement, amend, or otherwise modify these Invalidity Contentions, including the associated charts and exhibits, as

2

further clarification and/or additional information becomes available with respect to any of the above-listed issues.

Defendants' Invalidity Contentions should not be taken to imply in any way that Serverside's reading of the patent claims is correct, or supports any particular construction. Rather, Serverside's Infringement Contentions demonstrate that Serverside reads the claims in a manner that is unsupported by the language of the Asserted Claims, as well as both the specifications and prosecution histories of the Patents-in-Suit.

Serverside has asserted specific claims of each of the Patents-in-Suit. These Invalidity Contentions do not address any claims, or theories of infringement other than those addressed in Serverside's Infringement Contentions, and should not be used to address or interpret any additional claims or theories of infringement. To the extent that Serverside asserts additional claims or infringement theories in excess of those in its present Infringement Contentions, the Defendants reserve the right to amend or supplement these Invalidity Contentions so as to fully address these additional claims. It should be noted that nothing herein admits in any way that any of Defendants' products or services, including those which Serverside has accused or detailed in its Infringement Contentions, infringe any of the Asserted Claims, either directly or indirectly.

### A.    Invalidity Claim Charts

These Invalidity Contentions, including the charts attached hereto as Exhibits A and B, specifically identify the prior art currently known to and understood by the Defendants that invalidates the Asserted Claims under 35 U.S.C. §§ 102 and/or 103. The Defendants reserve the right to modify, supplement, or otherwise amend these Invalidity Contentions as a result of any additional information found by the Defendants with regard to its ongoing investigation of the

issue of anticipation under 35 U.S.C. § 102 or obviousness under 35 U.S.C. § 103.   The Defendants additionally reserve the right to add to the list of anticipatory prior art, or art that renders the Asserted Claims obvious, as a result of future case developments and investigation of the prior art.

With these Invalidity Contentions, the Defendants have provided charts in Exhibits A and B with quotations, figures, and citations that demonstrate where in each item of prior art each limitation is found, thus anticipating and/or rendering obvious the Asserted Claims under 35 U.S.C. §§ 102 and/or 103.   The citations provided are merely non-limiting examples, and do not imply that other portions of the prior art references are not also relevant to the validity of the Asserted Claims.

While the Defendants have attempted to cite to the most relevant portions of the identified prior art based on the information presently available to it, other portions of the identified prior art may also disclose elements, either expressly or inherently, and anticipate and/or render obvious one or more elements of the Asserted Claims.   The Defendants reserve the right to rely on un-cited portions of the identified prior art, additional documents that describe the prior art, additional documents that lend context to the prior art, fact witness testimony and/or expert testimony to demonstrate the invalidity of the Patents-in-Suit.   Moreover, the Defendants reserve the right to use un-cited portions of the prior art, additional documents that describe the prior art, additional prior art, fact witness testimony and/or expert testimony to provide context, and/or aid in understanding the cited portions of the identified prior art.

In each case that the Defendants cite to a particular drawing or figure, the citation encompasses not only the drawing or figure, but also any text associated with the drawing or figure.   Similarly, in each case the Defendants cite to particular text concerning or referencing a

4

drawing or figure in a prior art reference, the citation should be understood to encompass not only the text, but the drawing or figure referenced, and any text associated with the figure. Additionally, the identification of a figure within a prior art reference includes all of its sub-figures. For example, if a figure (e.g., Fig. 7) has three sub-figures (Figs. 7a, 7b, and 7c), the identification of that figure (e.g., Fig. 7) as a relevant citation within the reference shall signify an identification of the three sub-figures (e.g., Figs. 7a, 7b, and 7c) as well. Defendants' exemplary citations include citations that disclose subject matter recited in the preambles of the claims; the Defendants provide these citations without regard to whether the preambles are limitations of the Asserted Claims. The Defendants do not take any position at this time whether or not the preambles of the Asserted Claims are limitations, and will address this topic during the planned claim construction process.

Throughout these Invalidity Contentions, nothing should be taken as an admission, of any sort, that any of Defendants' accused product or services, or any of Defendants' other products or services, infringe any of the Asserted Claims, either directly or indirectly.

The bases upon which the Defendants claim that each of the Patents-in-Suit is invalid are discussed in general terms below.

**B.      Anticipation**

In these Contentions, the Defendants assert references which anticipate ("anticipatory references"), and render invalid, the each of the Asserted Claims of the Patents-in-Suit under 35 U.S.C. § 102(a), (b), (e), (f), and/or (g). The anticipatory references comprise patents and printed publications, known, used, sold, offered for sale, or invented prior to invention of each of the Patents-in-Suit. For each reference, a table is provided which identifies prior art items for use in establishing invalidity by anticipation.

5

In addition, as noted above, the Defendants are currently conducting discovery regarding a number of prior art product and systems designed and/or implemented prior to the claimed invention of the Patents-in-Suit.   This discovery extends to the inventors and companies associated with each piece of prior art in these contentions, and may lead to the discovery of prior art systems and/or products that invalidate the Asserted Claims under 35 U.S.C. §§ 102(f) and/or 102(g).

The Defendants additionally reserve the right to add to these lists of anticipatory prior art items as a result of future case developments and investigation of the prior art.   Additional evidence regarding the features and elements of the prior art references may be provided by witness testimony, and by additional documents that describe the prior art reference and that are discovered through the course of ongoing discovery.

## C.    Obviousness

These Invalidity Contentions, including the charts attached hereto as Exhibits A and B, specifically identify the prior art currently known to and understood by the Defendants that renders obvious the Asserted Claims under 35 U.S.C. § 103. The specific prior art combinations which render the Asserted Claims obvious are disclosed below for each of the Patents-in-Suit.

To the extent any limitation is deemed not to be met by material disclosed in a prior art item, or to be inherent, the Defendants contend that the difference would have been obvious to a person of ordinary skill in the art and within the knowledge of one skilled in the art at the time of the alleged invention, so that the claimed invention would have been obvious both in light of the single reference alone and/or in light of combined references.   The suggested obviousness combinations are in addition and in the alternative to Defendants' anticipation contentions, and should not be construed to suggest that any reference included in the combinations is not

6

anticipatory. In addition, for each prior art reference identified herein, references associated with the same project, product, working group, and/or author, may be used to the inherency of claim elements, or may be combined to teach the obviousness of the Asserted Claims of the Patents-in-Suit.

Common knowledge of those of ordinary skill in the art can be prior art and may be relied on by the Defendants by way of testimony or declarations in combination with the identified prior art references. *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727, 1740-41 (2007). Here, each of the identified prior art items can be combined with the knowledge of those of ordinary skill in the art or with each other to render the Asserted Claims invalid through obviousness, as further detailed below and in the Exhibits.

For each Patent-in-Suit, a table of obviousness combination references has been provided. In each table, prior art items identified in the left-most column of the table below may each be combined or modified with teachings in the prior art, as reflected in one or more other prior art items identified in the right-most column of each, to render the Asserted Claims invalid. More specifically, the Defendants contend that respective combinations of prior art items identified in the table for each of the Patents-in-Suit render the Accused Claims invalid due to obviousness (e.g., based on two-way or three-way combinations). In addition, the Defendants contend that a person of ordinary skill in the art would have had motivation to combine these references, and would have done so to yield predictable results, without undue experimentation, that would have provided results that included each and every element of the claims for which prior art combination is being asserted. Also, as a matter of clarification, the Defendants contend that a reference asserted for the purpose of obviousness may by itself render one or more of the Asserted Claims of the Patents-in-Suit invalid due to obviousness. Such a reference may

7

disclose each and every element of one or more Asserted Claims in a manner that would have been obvious for combination by a person of ordinary skill in the art.

The Defendants have endeavored to identify obviousness combinations based on its current understanding of many factors in the case such as Serverside's Infringement Contentions, the substance of references, proposed claim constructions, and other information. For example, the Defendants are not yet aware of how Serverside will ultimately contend the Asserted Claims should be construed. Depending on Serverside's assertions on claim construction, different references discussed in these Invalidity Contentions and the attached charts may be of greater or lesser relevance, and different combinations of these references may be implicated. In view of Defendants' uncertainty regarding how Serverside will contend the claims apply, the discussion of the different references in the exhibits to these Invalidity contentions may reflect alternative applications of the prior art against the Asserted Claims. In addition, the Defendants are currently unaware of the extent, if any, to which Serverside will contend that limitations of the claims at issue are not disclosed in the art identified by the Defendants as rendering the claims anticipated and/or obvious. To the extent that an issue arises with respect to any such limitation, the Defendants reserve the right to identify other references and combinations, which may make obvious the addition of the allegedly missing limitation to the disclosed device, method, system, or any related characteristics. In addition, it should be understood that to the extent that Serverside claims that any anticipatory reference is missing any element or limitation of the Asserted Claims, any references asserted as anticipatory may be combined with any other reference asserted as anticipatory, to render the Asserted Claims obvious. Similarly, these anticipatory references could be combined with any reference disclosing knowledge of one of ordinary skill in the art, such as trade publications and journal articles, to render the asserted

8

claims obvious.   The below-identified combinations shall not be understood to exclude Defendants' ability to use any of the disclosed references or portions thereof to support a combination (e.g., to clarify, explain, or address issues in dispute with respect to combination such as a motivation to combine).  The same applies to the specification, prosecution history, and cited art of the '199 and '490 Patents.  As a further matter of clarification, various prior art systems and references, including those identified herein, may be used to demonstrate that each claim element was widely known, understood, implemented in the prior art, and/or would have been known to one of ordinary skill in the art at the time of the alleged invention.   The Defendants reserve the right to illustrate this knowledge using one or more of these prior art items identified herein.

### 1.      Motivation to Combine

In *KSR Int'l Co. v. Teleflex, Inc.*, the United States Supreme Court instructed courts to apply "an expansive and flexible approach" to the obviousness inquiry.  *See* 127 S.Ct. at 1739. "The obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation, or by overemphasis on the importance of published articles and the explicit content of issued patents." *Id.* at 1741.  The Court rejected a too-rigid application of the "teaching, suggestion, or motivation test (TSM test), under which a patent claim is only proved obvious if 'some motivation or suggestion to combine the prior art teachings' can be found in the prior art, the nature of the problem, or the knowledge of a person having ordinary skill in the art." *KSR*, 127 S.Ct. 1727, 1734 (2007) (quoting *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323-24 (Fed. Cir. 1999)).

The Court specifically held that "if a technique has been used to improve one device, and a person of ordinary skill in the art would improve similar devices in the same way, using the

technique is obvious unless its actual application is beyond his or her skill." *Id.* at 1740. The Court further stated that "[i]t is common sense that familiar items may have obvious uses beyond their primary purposes, and a person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 1742. "Granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may, in the case of patents combining previously known elements, deprive prior inventions of their value or utility." *Id.* at 1741.

The Defendants have provided invalidating prior art references evidencing teachings, suggestions, and/or motivations to combine in a way to render the Asserted Claims obvious. The legal construct of a person of ordinary skill would have had knowledge of and access to the prior art identified herein, including materials found in the attached Exhibits A and B, and would have at least the ordinary creativity and skill to combine the attached references in ways not explicitly recited below. In order to invalidate the Asserted Claims, the Defendants have shown that the combinations and modifications of the prior art would arise from ordinary innovation, ordinary skill, or common sense or would be obvious to try or otherwise predictable. Design incentives and other market forces also prompt those combinations and modifications. As the Supreme Court pointed out in KSR:

> "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance the fact that a combination was obvious to try might show that it was obvious under §103."

*Id.* at 1742. Here, one of ordinary skill in the art would have recognized that the combinations identified herein would have been obvious to try with predictable results and without undue

experimentation, would have found a finite number of predictable solutions as reflected in the prior art identified herein, and would have been clearly motivated to modify and combine the prior art items identified below to arrive at the alleged inventions of the Asserted Claims.  In other words, each of the Patents-in-Suit combine known elements in a trivial way, i.e., the claimed systems use functional elements or devices well-known in the financial card design and custom graphics industries as building blocks according to their known predictable uses – reflecting their obviousness.

One of ordinary skill in the art implementing such a system would be motivated to investigate the various existing printed publications and/or domestic and foreign patents identified herein to address his/her particular needs.  Other motivations can include situations where a prior art item is directed to a project, product, or the work of an author or working group, which would lead one to consider other information on the same project, product, or body of work.  Such sources, such as trade publications related to the financial card industry provide numerous explicit teachings and a motivation to combine prior art references.

There may also exist additional motivations to combine or modify the prior art. Those having ordinary skill in the art at the time of the filing of the Patents-in-Suit would also have been motivated to make combinations based on a reference using or incorporating any other patent, publication, and/or references in a similar field or having a similar technology. For example, a suggestion to use or rely on one technology would also be a motivation to refer to components of, or natural extensions of that technology.  A further motivation or suggestion can be a design need, or optimization that combines or integrates different components well known in the art. In addition to the obviousness combinations identified for each of the Patents-in-Suit provided below, the Defendants aver that, generally, it would have been obvious to combine

11

well-known techniques in the field of financial card design with the standard elements of a custom graphics to arrive at the Asserted Claims, and thereby render each of the Asserted Claims invalid for obviousness under 35 U.S.C. § 103(a).

Thus, the suggestion or motivation to modify or combine references for obviousness purposes is provided by the explicit and implicit teachings of the prior art identified by the Defendants, the knowledge of one of ordinary skill in the art, and/or the nature of the claimed invention and the problem(s) purportedly being solved. Although the Defendants have provided examples of bases for suggestion or motivation to modify or combine references, the Defendants reserve the right to identify additional bases or motivations drawn from testimony of fact witnesses and/or expert witnesses. In addition, based on ongoing discovery with regards to both prior art references and potential motivations to combine or modify references, the Defendants reserve the right to amend its Invalidity Contentions in order to assert additional combination which render the Patents-in-Suit invalid.

Accordingly, in line with the teachings in *KSR*, the identified prior art combinations are directed to the field of financial transaction card design and production equipment. In addition, the references asserted as combinations are directed towards solving similar problems as the Patents-in-Suit. For example, the references asserted in combination with respect to the '199 and '490 patents deal with issues such as custom financial cards, image customization, preparing for and placing custom images on customizable products including financial products. Accordingly, a person of ordinary skill in the art at the time of the purported invention of the Asserted Claims would have been motivated to combine or modify such references when considering issues regarding product customization, including financial card customization. One of ordinary skill in the art would have such motivation because these references address common problems in a

12

common field of endeavor, and involve common or similar techniques and/or solutions. Similarly, the references address issues of data security, including with respect to financial and other personal information, and maintaining security of such information during transmission or use over the Internet, or other transmission mediums. In addition, knowledge of one of skill in the art, in combination with references regarding financial card customization could result in many of the asserted claims. For example, financial card data encryption had been addressed by standards bodies, including ASC X9, well in advance of the priority date of the patents-in-suit. *See* Kaliski, Burt, *A Survey of Encryption Standards,* IEEE Micro (Dec. 1993). One of skill in the art would have had knowledge of such encryption standards and combined them with financial card customization to arrive at the Asserted Claims. Therefore it would have been obvious to combine concepts of data security with references related to financial card customization and image customization to arrive at the Asserted Claims.

### D.      Invalidity Under 35 U.S.C. § 112

These Invalidity Contentions specifically identify why several of the Asserted Claims of each of the Patents-in-Suit are invalid for failing to comply with the requirements of 35 U.S.C. § 112, including, for indefiniteness, for failure to meet the written description requirement, failure to provide enabling disclosure, failure to disclose best mode, and/or the use of insolubly ambiguous terms in describing the claimed technology. In addition, Defendants' investigation of the Patents-in-Suit is ongoing, Serverside has not yet provided its perceived meaning of any of the relevant terms of the '199 or '490 Patents, and the Court has yet to issue a claim construction order in this matter. Accordingly, the Defendants may find additional bases of invalidity for each of the Patents-in-Suit for failure to comply with 35 U.S.C. § 112, and reserves the right to amend these Invalidity Contentions accordingly.

II.     **Invalidity Contentions with Respect to U.S. Patent No. 7,931,199**

    A.     **Anticipation with Respect to U.S. Patent No. 7,931,199**

    Pursuant to agreement of the parties and the Revised Scheduling Order, Table 1 below lists prior art references, each of which anticipates one or more claims of the '199 Patent.   In addition, the Defendants have provided a chart for each reference.   Each chart shows where each limitation of one or more of the Asserted Claims of the '199 Patent can be found within the reference.   As set forth herein, each of the Asserted Claims of the '199 Patent are invalid under 35 U.S.C. § 102 in view of the prior art listed below and set forth in detail in Exhibit A.

14

**Table 1: List of Prior Art References Which Anticipate U.S. Patent No. 7,931,199**

| BATES Range | Reference | Priority Date | Issue / Publication Date | Anticipates Under | Claims of the '199 Patent Anticipated |
|---|---|---|---|---|---|
| DEF-00000631-644 | 6,588,673 ("Chan") | Feb. 8, 2000 | Jul. 8, 2003 | 102(a), 102(e) | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000168-102 | 2004/0143526 ("Monasterio") | Jun. 19, 2002 | Jul. 22, 2004 | 102(a), 102(e) | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000545-575 | 2004/0099730 ("Tuchler") | Nov. 27, 2002 | May 27, 2004 | 102(a), 102(e) | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000595-613 | 6,202,155 ("Tushie") | Nov. 22, 1996 | Mar. 13, 2001 | 102(a), 102(b), 102(e) | 1, 2, 9, 14, 16, 18, 22, 25, 29, and 30 |
| DEF-00000141-159 | 6,196,459 ("Goman") | May 11, 1998 | Mar. 6, 2001 | 102(a), 102(b), 102(e) | 1, 2, 9, 14, 18, 22, 25, 29, and 30 |

15

**B.    Obviousness with Respect to U.S. Patent No. 7,931,199**

Pursuant to agreement of the parties and the Revised Scheduling Order Table 2(a) below lists prior art combinations that render obvious, and thus invalidate under 35 U.S.C. § 103, one or more claims of the '199 Patent.  In addition, Table 2(b) lists those references which may render one ore more claims of the '199 obvious.  Each of these charts is included in Exhibit A, as indicated within the tables below.

The Defendants note that the specific combinations of prior art disclosed herein are exemplary of other combinations of prior art that may also render the Asserted Claims obvious. As such, the Defendants reserve the right to rely on both the explicitly identified combinations, as well as any other combination of the prior art references disclosed herein.

To the extent that any element of an Asserted Claim of the '199 is not disclosed in the anticipatory references discussed above, the Defendants contend that the anticipatory reference of Table 1 may be combined with one another, or may be combined with one or more of the references identified in Tables 2(a), 2(b), and/or the knowledge and skill of a person of ordinary skill in the art at the time the technology of the '199 Patent was allegedly invented, to render obvious each of the Asserted Claims of the '199 Patent.

In addition, these references may be combined for all of the reasons described in the section on "Motivation to Combine" above.

16

**Table 2(a): List of Prior Art Combinations Which Render Obvious U.S. Patent No. 7,931,199**

| BATES Range | References | References for Combination | Claims of the '199 Patent Rendered Obvious |
|---|---|---|---|
| DEF-00000089-109; DEF-00000723-742; DEF-00000645-660 | 7,576,752 ("Benson") | Int'l Patent Publication No. WO 03/085573 ("Kim"); 7,065,249 ("Fushiki") | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000545-575; DEF-00000723-742; DEF-00000089-109 | 2004/0099730 ("Tuchler") | Int'l Patent Publication No. WO 03/085573 ("Kim"); 7,576,752 ("Benson") | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000168-182; DEF-00000089-109 | 2004/0143526 ("Monasterio") | 7,576,752 ("Benson") | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000595-613; DEF-00000089-109 | 6,202,155 ("Tushie") | 7,576,752 ("Benson") | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000168-182; DEF-00000595-613 | 2004/0143526 ("Monasterio") | 6,202,155 ("Tushie") | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000545-575; DEF-00000595-613 | 2004/0099730 ("Tuchler") | 6,202,155 ("Tushie") | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000545-575; DEF-00000160-167 | 2004/0099730 ("Tuchler") | A Survey of Encryption Standards | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000168-182; DEF-00000160-167 | 2004/0143526 ("Monasterio") | A Survey of Encryption Standards | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000545-575; DEF-00000207-497 | 2004/0099730 ("Tuchler") | RFC2801 | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000168-182; DEF-00000207-497 | 2004/0143526 ("Monasterio") | RFC2801 | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000545-575; DEF-00000498-544 | 2004/0099730 ("Tuchler") | Security Methods, System and Products for E-Commerce | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000168-182; | 2004/0143526 | Security Methods, System and Products | 1, 2, 9, 14-16, 18, 22, 25, 29, and |

| | | for E-Commerce | 30 |
|---|---|---|---|
| DEF-00000498-544 | ("Monasterio") | | |
| DEF-00000595-613; DEF-00000614-630 | 6,202,155 ("Tushie") | 2002/105665 ("Wasilewski") | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000141-159; DEF-00000614-630 | 6,196,459 ("Goman") | 2002/105665 ("Wasilewski") | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000168-182; DEF-00000694-722 | 2004/0143526 ("Monasterio") | 6,493,677 ("von Rosen") | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000545-575; DEF-00000694-722 | 2004/0099730 ("Tuchler") | 6,493,677 ("von Rosen") | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000595-613; DEF-00000694-722 | 6,202,155 ("Tushie") | 6,493,677 ("von Rosen") | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000141-159; DEF-00000694-722 | 6,196,459 ("Goman") | 6,588,673 ("Chan") | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000026-088; DEF-00000631-644 | 6,330,068 ("Mastuyama"); | 2004/0143526 ("Monasterio") | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000026-088; DEF-00000168-182 | 6,330,068 ("Mastuyama") | 2004/0099730 ("Tuchler") | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000026-088; DEF-00000545-575 | 6,330,068 ("Mastuyama") | 6,202,155 ("Tushie") | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000026-088; DEF-00000595-613 | 6,330,068 ("Mastuyama") | 6,196,459 ("Goman") | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000026-088; DEF-00000141-159 | 6,330,068 ("Mastuyama") | | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |

**Table 2(b): Additional List of Prior Art References Which Render Obvious U.S. Patent No. 7,931,199**

| BATES Range | Reference | Priority Date | Issue / Publication Date | Claims of the '199 Patent Rendered Obvious |
|---|---|---|---|---|
| DEF-00000089-109 | 7,576,752 ("Benson") | Oct. 4, 2000 | Aug. 18, 2009 | 1, 2, 9, 14-16, 18, 22, 29, and 30 |
| DEF-00000614-630 | 2002/105665 ("Wasilewski") | Feb. 8, 2001 | Aug. 8, 2002 | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000723-742 | Int'l Patent Publication No. WO 03/085573 ("Kim") | Apr. 4, 2003 | Oct. 16, 2003 | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000645-660 | 7,065,249 ("Fushiki") | July 25, 2002 | June 20, 2006 | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000694-722 | 6,493,677 ("von Rosen") | Jan. 19, 2000 | Dec. 10, 2002 | 1, 2, 9, 14-16, 18, 22, 25, 29, and 30 |
| DEF-00000026-088 | 6,330,068 ("Matsuyama") | Apr. 23, 1998 | Dec. 11, 2001 | 1, 2, 14, 1, 29, and 30 |
| DEF-00000679-693 | 7618,066 ("Baldus") | Mar. 26, 2001 | Nov. 17, 2009 | 25 |
| DEF-00000160-167 | A Survey of Encryption Standards ("Kaliski") | | Dec. 1993 | 1 |
| DEF-00000498-544 | Security Methods, System and Products for E-Commerce ("Schende") | | Oct. 7, 2009 | 1 |
| DEF-0000207-497 | RFC2801 | | Apr. 2000 | 1 |

**C.      Invalidity Based on 35 U.S.C. § 112 with Respect to U.S. Patent No. 7,931,199**

The Asserted Claims of the '199 Patent are invalid for failing to comply with the requirements of 35 U.S.C. § 112.   Below are examples of the bases on which each of the Asserted Claims of the '199 Patent fail to meet this section.   As the Defendants gain a greater understanding of the Patents-in-Suit (including Serverside's perception of the Asserted Claims), the meaning of relevant terms, and the Court's construction of relevant terms, the Defendants may amend these bases to include additional bases for invalidity under 35 U.S.C. § 112.

**1.      Invalidity under 35 U.S.C. § 112(2) – Indefiniteness with Respect to U.S. Patent No. 7,931,199**

One or more Asserted Claims of the '199 Patent are invalid for failing to meet the definiteness requirement of 35 U.S.C. § 112(2).   Examples of these failures are provided below.

a) Claim 1 of the patent is invalid, because the term "a module configured to receive a personalized image" as recited in claim 1 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

b) Claim 1 of the patent is invalid, because the term "a module configured to receive a customer identifier" as recited in claim 1 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

c) Claim 1 of the patent is invalid, because the term "a module configured to receive a financial record" as recited in claim 1 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

d) Claim 1 of the patent is invalid, because the term "relevant financial information" as recited in claim 1 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

e) Claim 1 of the patent is invalid, because the term "customer identifier comprises an identifier selected from a secure unique identifier and a one-way code" as recited in claim 1 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

f) Claim 15 of the patent is invalid, because the term "assigning the customer identifier to a login session" as recited in claim 15 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

g) Claim 18 of the patent is invalid, because the term "a module to generate the customer identifier" as recited in claim 18 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

h) Claim 29 of the patent is invalid, because the term "computer apparatus" as recited in claim 29 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

i) Claim 29 of the patent is invalid, because the term "said link being operable to receive instructions defining said plurality of manipulations" as recited in claim 29 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

j) Claim 29 of the patent is invalid, because the term "plurality of manipulations to the graphical representation" as recited in claim 29 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

-21-

k) Claim 29 of the patent is invalid, because the term "manipulations emulating those applied to the graphical representation" as recited in claim 29 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

l) Claim 30 of the patent is invalid, because the term "representative version" as recited in claim 29 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

### 2. Invalidity under 35 U.S.C. § 112(1) – Lack of Written Description with Respect to U.S. Patent No. 7,931,199

A patent's "specification must contain a written description of the invention to establish what the invention is." *Ariad Pharmaceuticals, Inc. v. Eli Lilly and Comp.*, 598 F.3d 1336, 1342 (Fed. Cir. 2010). This requirement is meant, in part, to inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not. *Id.* at 1346. A generic claim is supported by a specific embodiment only if the specification "reasonably convey[s] to a person skilled in the art that [the inventor] had possession of the claimed subject matter at the time of filing" and enabled practice of the full scope of the claimed invention. *Id.*; *see also, LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005), reh'g en banc denied, 433 F.3d 1373 (Fed. Cir. 2006) (*citing Bilstad v. Wakalopulos*, 386 F.3d 1116, 1125 (Fed. Cir. 2004)).

One or more Asserted Claims of the '199 Patent are invalid for failing to meet the written description requirement of 35 U.S.C. § 112(1). Examples of these failures are provided below.

a) The term "assigning a customer identifier to a login session" as used in claim 15 does not have an understood meaning, including to one of ordinary skill in the art, and the

-22-

'199 Patent lacks supporting disclosure.  Accordingly, claim 15 of the '199 Patent is invalid for failure to meet the written description requirement.

b) The term "computer apparatus" as used in claim 29 does not  have an understood meaning, including to one of ordinary skill in the art, and the '199 Patent lacks supporting disclosure.  Accordingly, claim 29 of the '199 Patent is invalid for failure to meet the written description requirement.

### 3.   Invalidity under 35 U.S.C. § 112(1) – Lack of Enablement with Respect to U.S. Patent No. 7,931,199

One or more Asserted Claims of the '199 Patent are invalid for failure to provide sufficient disclosure to enable the claims; one of ordinary skill in the art would be unable to make or use the full scope of the claimed invention without undue experimentation.  Examples of these failures are provided below.

a) The '199 Patent fails to provide sufficient enabling disclosure to teach one of ordinary skill in the art how to implement "a controller operable, based on said customer identifier, to cause printing of said personalized customer image onto the card material" as recited in Claim 1, thus rendering Claim 1 invalid.

b) The '199 Patent fails to provide sufficient enabling disclosure to teach one of ordinary skill in the art how to implement "a secure unique identifier and a one-way code" as recited in Claim 1, thus rendering Claim 1 invalid.

III.   **Pat. R. 3.3 (a), (b), and (c) with Respect to U.S. Patent No. 7,946,490**

    A.   **Anticipation with Respect to U.S. Patent No. 7,946,490**

       Tables 3(a) and 3(b) below list prior art references that anticipates one ore more claims of the '490 Patent.  In addition, the Defendants provide a chart associated with each reference that charts where each limitation of one or more of the Asserted Claims of the '490 Patent can be found within the reference.  As set forth herein, each of the Asserted Claims of the '490 Patent are invalid under 35 U.S.C. § 102 in view of the prior art listed below and addressed in Exhibit B.

**Table 3: List of Prior Art References Which Anticipate U.S. Patent No. 7,946,490**

| BATES Range | Reference | Priority Date | Issue / Publication Date | Anticipates Under | Claims of the '490 Patent Anticipated |
|---|---|---|---|---|---|
| DEF-00000631-644 | 6,588,673 ("Chan") | Filed Feb. 8, 2000 | Issued Jul. 8, 2003 | 102(a), 102(e) | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, 31 |
| DEF-00000168-102 | 2004/0143526 ("Monasterio") | Jun. 19, 2002 | Jul. 22, 2004 | 102(a), 102(e) | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, 31 |
| DEF-00000545-575 | 2004/0099730 ("Tuchler") | Nov. 27, 2002 | May 27, 2004 | 102(a), 102(e) | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, 31 |
| DEF-00000595-613 | 6,202,155 ("Tushie") | Nov. 22, 1996 | Mar. 13, 2001 | 102(a), 102(b), 102(e) | 1, 2, 9, 14, 16, 18, 22, 25, 29, 30, 31 |
| DEF-00000141-159 | 6,196,459 ("Goman") | May 11, 1998 | Mar. 6, 2001 | 102(a), 102(b), 102(e) | 1, 2, 9, 14, 18, 22, 25, 29, 30, and 31 |

-25-

**B.**     **Obviousness with Respect to U.S. Patent No. 7,946,490**

Pursuant to agreement of the parties and the Court's scheduling order Table 4(a) below lists prior art combinations that render obvious, and thus invalidate under 35 U.S.C. § 103, one or more claims of the '490 Patent.  In addition, Table 4(b) lists those references which may render one ore more claims of the '490 Patent obvious.  Each of these charts is included in Exhibit B, as indicated within the tables below.

Defendants note that the specific combinations of prior art disclosed herein are exemplary of other combinations of prior art that may also render the Asserted Claims obvious.  As such, the Defendants reserve the right to rely on both the explicitly identified combinations, as well as any other combination of the prior art references disclosed herein.

To the extent that any element of an Asserted Claim of the '490 Patent is not disclosed in the  anticipatory references discussed above, Defendants contend that the anticipatory reference of Table 3 may be combined with one another, or may be combined with one or more of the references identified in Tables 4(a), 4(b), and/or the knowledge and skill of a person of ordinary skill in the art at the time the technology of the '490 Patent was allegedly invented, to render obvious each of the Asserted Claims of the '490 Patent.

In addition these references may be combined for all of the reasons described in the section on "Motivation to Combine" above.

**Table 4(a): List of Prior Art Combinations Which Render Obvious U.S. Patent No. 7,946,490**

| BATES Range | References | References for Combination | Claims of the '490 Patent Rendered Obvious |
|---|---|---|---|
| DEF-00000089-109; DEF-00000723-742; DEF-00000645-660 | 7,576,752 ("Benson") | Int'l Patent Publication No. WO 03/085573 ("Kim"); 7,065,249 ("Fushiki") | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000545-575; DEF-00000723-742; DEF-00000089-109 | 2004/0099730 ("Tuchler") | Int'l Patent Publication No. WO 03/085573 ("Kim"); 7,576,752 ("Benson") | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000168-182; DEF-00000089-109 | 2004/0143526 ("Monasterio") | 7,576,752 ("Benson") | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000595-613; DEF-00000089-109 | 6,202,155 ("Tushie") | 7,576,752 ("Benson") | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000168-182; DEF-00000595-613 | 2004/0143526 ("Monasterio") | 6,202,155 ("Tushie") | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000545-575; DEF-00000595-613 | 2004/0099730 ("Tuchler") | 6,202,155 ("Tushie") | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000545-575; DEF-00000160-167 | 2004/0099730 ("Tuchler") | A Survey of Encryption Standards | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000168-182; DEF-00000160-167 | 2004/0143526 ("Monasterio") | A Survey of Encryption Standards | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000545-575; DEF-00000207-497 | 2004/0099730 ("Tuchler") | RFC2801 | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000168-182; DEF-00000207-497 | 2004/0143526 ("Monasterio") | RFC2801 | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000545-575; DEF-00000498-544 | 2004/0099730 ("Tuchler") | Security Methods, System and Products for E-Commerce | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |

| | | Security Methods, System and Products for E-Commerce | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
|---|---|---|---|
| DEF-00000168-182; DEF-00000498-544 | 2004/0143526 ("Monasterio") | 2002/105665 ("Wasilewski") | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000595-613; DEF-00000614-630 | 6,202,155 ("Tushie") | 2002/105665 ("Wasilewski") | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000141-159; DEF-00000614-630 | 6,196,459 ("Goman") | 6,493,677 ("von Rosen") | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000168-182; DEF-00000694-722 | 2004/0143526 ("Monasterio") | 6,493,677 ("von Rosen") | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000545-575; DEF-00000694-722 | 2004/0099730 ("Tuchler") | 6,493,677 ("von Rosen") | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000595-613; DEF-00000694-722 | 6,202,155 ("Tushie") | 6,588,673 ("Chan") | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000141-159; DEF-00000694-722 | 6,196,459 ("Goman") | 2004/143526 ("Monasterio") | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000026-088; DEF-00000631-644 | 6,330,068 ("Mastuyama") | 2004/0099730 ("Tuchler") | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000026-088; DEF-00000168-182 | 6,330,068 ("Mastuyama") | 6,202,155 ("Tushie") | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000026-088; DEF-00000545-575 | 6,330,068 ("Mastuyama") | 6,196,459 ("Goman") | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000026-088; DEF-00000595-613 | 6,330,068 ("Mastuyama") | | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |
| DEF-00000026-088; DEF-00000141-159 | 6,330,068 ("Mastuyama") | | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, and 31 |

**Table 4(b): Additional List of Prior Art References Which Render Obvious U.S. Patent No. 7,946,490**

| BATES Range | Reference | Priority Date | Issue / Publication Date | Claims of the '490 Patent Rendered Obvious |
|---|---|---|---|---|
| DEF-00000089-109 | 7,576,752 ("Benson") | Oct. 4, 2000 | Aug. 18, 2009 | 1, 2, 9, 14-16, 18, 22, 29, 30, 31 |
| DEF-00000614-630 | 2002/105665 ("Wasilewski") | Feb. 8, 2001 | Aug. 8, 2002 | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, 31 |
| DEF-00000723-742 | Int'l Patent Publication No. WO 03/085573 ("Kim") | Apr. 4, 2003 | Oct. 16, 2003 | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, 31 |
| DEF-00000645-660 | 7,065,249 ("Fushiki") | July 25, 2002 | June 20, 2006 | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, 31 |
| DEF-00000694-722 | 6,493,677 ("von Rosen") | Jan. 19, 2000 | Dec. 10, 2002 | 1, 2, 9, 14-16, 18, 22, 25, 29, 30, 31 |
| DEF-00000026-088 | 6,330,068 ("Matsuyama") | Apr. 23, 1998 | Dec. 11, 2001 | 1, 2, 14, 1, 29, 30, 31 |
| DEF-00000679-693 | 7618,066 ("Baldus") | Mar. 26, 2001 | Nov. 17, 2009 | 25 |
| DEF-00000160-167 | A Survey of Encryption Standards ("Kaliski") | | Dec. 1993 | 1, 29, 30, 31 |
| DEF-00000498-544 | Security Methods, System and Products for E-Commerce (Schende) | | Oct. 7, 2009 | 1, 29, 30, 31 |
| DEF-00000207-497 | RFC2801 | | Apr. 2000 | 1, 29, 30, 31 |

-29-

**C.**     **L. Pat. R. 3.3 (d) – Invalidity Based on 35 U.S.C. § 112 with Respect to U.S. Patent No. 7,946,490**

The Asserted Claims of the '490 Patent are invalid for failing to comply with the requirements of 35 U.S.C. § 112.  Below are examples of the bases on which each of the Asserted Claims of the '490 Patent fails to meet this section.  As the Defendants gain a greater understanding of the Patents-in-Suit, including Serverside's perception of the Asserted Claims, the meaning of relevant terms, and the Court's construction of relevant terms, the Defendants may amend these bases to include additional bases for invalidity under 35 U.S.C. § 112. Examples of these failures are provided below.

**1.**     **Invalidity under 35 U.S.C. § 112(2) – Indefiniteness with Respect to U.S. Patent No. 7,946,490**

One or more Asserted Claims of the '490 Patent are invalid for failing to meet the definiteness requirement of 35 U.S.C. § 112(2).  Examples of these failures are provided below.

a) Claim 1 of the patent is invalid, because the term "a module configured to receive a personalized image" as recited in claim 1 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

b) Claim 1 of the patent is invalid, because the term "a module configured to receive a customer identifier" as recited in claim 1 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

c) Claim 1 of the patent is invalid, because the term "a module configured to receive a financial record" as recited in claim 1 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

-30-

d) Claim 1 of the patent is invalid, because the term "customer identifier encompasses encrypted customer information" as recited in claim 1 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

e) Claim 15 of the patent is invalid, because the term "assigning the customer identifier to a login session" as recited in claim 15 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

f) Claim 18 of the patent is invalid, because the term "a module to generate the customer identifier" as recited in claim 18 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

g) Claim 29 of the patent is invalid, because the term "computer system" as recited in claim 29 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

m) Claim 29 of the patent is invalid, because the term "plurality of manipulations to the graphical representation" as recited in claim 29 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

n) Claim 29 of the patent is invalid, because the term "manipulations emulating those applied to the graphical representation" as recited in claim 29 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

h) Claim 30 of the patent is invalid, because the term "representative version" as recited in claim 29 is ambiguous, and would have been so to one of ordinary skill in the art, and is therefore indefinite.

i) Claim 31 of the patent is invalid, because the term "the blank card material" as recited in claim 31 lacks antecedent basis, is ambiguous, would have been so to one of ordinary skill in the art, and is therefore indefinite.

## 2. Invalidity under 35 U.S.C. § 112(1) – Lack of Written Description with Respect to U.S. Patent No. 7,946,490

"[A patent's] specification must contain a written description of the invention to establish what the invention is." *Ariad*, 598 F.3d at 1342. This requirement is meant, in part, to inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not. *Id.* at 1346. A generic claim is supported by a specific embodiment only if the specification "reasonably convey[s] to a person skilled in the art that [the inventor] had possession of the claimed subject matter at the time of filing" and enabled practice of the full scope of the claimed invention. *Id.*; *see also, LizardTech*, , 424 F.3d at 1346.

One or more Asserted Claims of the '490 Patent are invalid for failing to meet the written description requirement of 35 U.S.C. § 112(1). Examples of these failures are provided below. Examples of these failures are provided below.

a) The term "assigning a customer identifier to a login session" as used in claim 15 does not have an understood meaning, including to one of ordinary skill in the art, and the '490 Patent lacks supporting disclosure. Accordingly, Claims 15 of the '490 Patent is invalid for failure to meet the written description requirement.

b) The term "computer system" as used in claim 29 does not  have an understood meaning, including to one of ordinary skill in the art, and the '490 Patent lacks

-32-

supporting disclosure.   Accordingly, Claims 29 of the '490 Patent is invalid for failure to meet the written description requirement.

**3.      Invalidity under 35 U.S.C. § 112(1) – Lack of Enablement with Respect to U.S. Patent No. 7,946,490**

One or more Asserted Claims of the '490 Patent are invalid for failure to provide sufficient disclosure to enable the claims; one of ordinary skill in the art would be unable to make or use the full scope of the claimed invention without undue experimentation.   Examples of these failures are provided below.

a) The '490 Patent fails to provide sufficient enabling disclosure to teach one of ordinary skill in the art how to implement "a controller operable, based on said customer identifier, to cause printing of said personalized customer image onto the card material" as recited in Claim 1, thus rendering Claim 1 invalid.

b) The '490 Patent fails to provide sufficient enabling disclosure to teach one of ordinary skill in the art how to implement "encrypted customer information" as recited in Claims 1, 29, 30, and 31, thus rendering Claims 1, 29, 30, and 31 invalid.

## IV.     Conclusion

These Invalidity Contentions comprise Defendants' bases for invalidity of the Patents-in-Suit based on discovery performed to date.  As stated above, to the extent that additional bases for asserting the invalidity of the Patent-in-Suit arise, the Defendants reserve the right to amend and/or modify these Invalidity Contentions accordingly.


Dated: August 24, 2012                          Respectfully submitted,



                                                /s/ Krishnan Padmanabhan
                                                Krishnan Padmanabhan (SBN: 254220)
                                                kpadmanabhan@winston.com
                                                WINSTON & STRAWN LLP
                                                200 Park Ave.
                                                New York, NY 10166-4193
                                                (212) 294-6700

                                                *Attorney for Defendants*
                                                *CPI Card Group-Colorado, Inc.,*
                                                *The Members Group, Inc.,*
                                                *PSCU Financial Services, Inc.,*
                                                *Neighbors Credit Union, and*
                                                *Anheuser Busch Employees Credit Union*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2012 I served the following document on counsel for Plaintiffs by electronically transmitting a copy of the document listed below via email in accordance with the parties' agreement to be served electronically.  No error messages were received after said transmission.

### DEFENDANTS' INVALIDITY CONTENTIONS

_/s/  Marcus Hidalgo_
Marcus Hidalgo

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00733-PAB

SERVERSIDE GROUP LIMITED, and
SERVERSIDE GRAPHICS, INC.,

      Plaintiffs,

v.

CPI CARD GROUP-COLORADO, INC.,
THE MEMBERS GROUP, INC.,
NEIGHBORS CREDIT UNION,
PSCU FINANCIAL SERVICES, INC., and
ANHEUSER BUSCH EMPLOYEES CREDIT UNION,

      Defendants.

---

## SERVERSIDE'S ANSWERS TO FIRST SET OF INTERROGATORIES (NOS. 1-7)

---

The Plaintiffs, Serverside Group Limited and Serverside Graphics, Inc. (collectively,

"Serverside") hereby answer Defendant's, CPI Card Group-Colorado, Inc. ("CPI Colorado"),

The Members Group, Inc. ("TMG"), PSCU Financial Services, Inc. ("PSCU"), Neighbors Credit

Union ("Neighbors"), and Anheuser Busch Employees Credit Union ("ABECU") (collectively,

"Defendants"), First Set of Interrogatories.

## <u>GENERAL OBJECTIONS</u>

1.     Serverside objects to the discovery requests to the extent that they:

     A.     Are directed to matters not relevant to the matters at issue in this action

and not reasonably calculated to lead to the discovery of admissible evidence;

B.      Seek information or identification of documents that are subject to the

attorney-client privilege, that constitute work product, or that are otherwise immune from

discovery;

C.      Seek information or identification of documents already known to

Defendants, in Defendants' possession, or available from public sources;

D.      Are overly broad, unduly burdensome, or oppressive; or

E.      Impose a burden beyond that imposed by the Federal Rules or the Local

Rules.

2.      Serverside objects to the discovery requests as seeking production of information

and documents beyond the scope provided in the Order Regarding E-Discovery in this Patent

Case (D.I. 39).  Serverside has prepared its answers and responses, and has produced and will

produce documents, to the extent and according to the procedures set forth in that Order.

3.      Serverside objects to the seven pages of definitions and instructions as

unnecessarily long, as well as confusing and burdensome.  Serverside has prepared its answers

and responses without regard to those definitions and instructions.


**ANSWERS**

**INTERROGATORY NO. 1**

*Identify each person who assisted with, contributed to, or participated in the conception*

*and/or reduction to practice of each of the alleged inventions of the Asserted Patents, including,*

*without limitation, anyone involved in the design, research, development, evaluation, and/or*

*testing of financial card customization tools, and describe the subject matter of each such*

*person's knowledge and his or her role in each of those activities.*

2

**ANSWER NO. 1**

Adam Elgar: Inventor; knowledge of the inventions claimed in U.S. Patent Nos. 7,931,199 B2 (the "'199 patent") and 7,946,490 B2 (the "'490 patent) (collectively, the "Asserted Patents"), and design, research, development, evaluation, and/or testing of embodiments of the inventions.

Tom Elgar: Inventor; knowledge of the inventions claimed in the Asserted Patents, and design, research, development, evaluation, and/or testing of embodiments of the inventions.

Andrew Francis, Vadim Kagan, and Andrew Cox were involved in, and have knowledge of, the design, research, development, evaluation, and/or testing of financial card customization tools.

**INTERROGATORY NO. 2**

*Identify and describe in detail all Prior Art known by or identified by the Serverside Plaintiffs or any predecessor-in-interest in the Patents-in-Suit that is related to one or more limitations in the claims of the Patent-in-Suit, related patents, or related applications, that was not disclosed to and/or not considered by the Examiner during prosecution, stating, on a reference-by-reference basis, whether the art was known during the prosecution of the Patent-in-Suit to the inventors, prosecuting attorneys, or any other person substantially involved in the prosecution of the Patent-in-Suit; a detailed explanation will include the time and manner in which the person first became aware of the Prior Art.*

**ANSWER NO. 2**

Serverside is not presently aware of any prior art references to the Asserted Patents that were not disclosed to the United States Patent and Trademark Office ("PTO") during prosecution of the Asserted Patents. References are listed on the faces of the Asserted Patents, and

3

Serverside will not further identify them.  Serverside was aware of the references disclosed during prosecution at least as of the dates when the references were listed in Information Disclosure Statements ("IDSs") submitted during prosecution, or, if references were not so listed, as of the dates they were identified by the Examiner in office actions or search reports during prosecution.

Serverside reserves the right to supplement this answer should it become aware of additional prior art references as discovery continues.

**INTERROGATORY NO. 3**

*If you contend that constructive or actual notice of potential infringement was provided to any Defendant under 35 U.S.C. § 287, prior to the commencement of the Present Litigation, describe in detail all facts, identify all individuals, and identify all documents (by Bates number), relevant to your contention, including but not limited to, the marking practices or policies of the Serverside Plaintiffs or any predecessor-in-interest in the Patents-in-Suit, the marking practices or policies of third party licensees of the Patents-in-Suit, marking practices or policies of customers who purchased products or technology embodying the Patents-in-Suit.*

**ANSWER NO. 3**

Defendants were placed on notice of U.S. Application Serial No. 10/545,833, of which the '199 and '490 patents are continuations, on or around April 4, 2008, when Michael Campbell of Serverside sent a letter to Ted Fisk, President & CEO of CPI Card Group.  Relevant documents include SSCPI0004269-4273.  As a result of this letter, Defendants were aware of the application to which the Asserted Patents claim priority in 2008.  They therefore would have been aware of continuations to that application, such as the Asserted Patents, and would have been aware of the Asserted Patents at least as of their respective dates of issuance.

4

Serverside's marking practices and policies are reflected in its Policy on Intellectual Property Rights, produced at SSCPI0004274-4275. Additional documents related to patent marking are produced at SSCPI0004276-4296. If Serverside locates additional documents relevant to patent marking, it will produce them.

**INTERROGATORY NO. 4**

*If you conducted a pre-filing investigation(s) regarding the alleged infringement of the claims of the Asserted Patent by any Accused Product, describe all facts related to such pre-filing investigation, including the date of the investigation, the name of each person involved in the investigation, the location and type of accused product(s) or device(s) analyzed or evaluated, or if no actual products were analyzed, the documents or other material analyzed in lieu thereof, and each claim number compared with each accused product.*

**ANSWER NO. 4**

Serverside objects to this Interrogatory as calling for the production of attorney-client privileged and/or attorney work-product immune information. To the extent that non-privileged, non-immune information responsive to this Interrogatory exists, it is reflected and incorporated into the Complaint (D.I. 1), which speaks for itself.

**INTERROGATORY NO. 5**

*Describe in detail each product designed, created, or sold by the Serverside Plaintiffs, or any predecessors-in-interest or licensee of the Patents-in-Suit, which embody any invention, or any portion of any invention, claimed in the Patents-in-Suit. A description should include, but not be limited to the product's trade name, any internal or development name, individuals*

5

*responsible for development of the product, date of creation, date of first sale, dates over which*

*it was sold, and customers that purchased or used the product.*

### ANSWER NO. 5

Serverside products practicing the claimed invention include AllAboutMe<sup>TM</sup> and

VirtualPortfolio<sup>TM</sup>.  These products did not have internal or development names.  Individuals

responsible for the development of these products include Adam Elgar, Tom Elgar, Andrew

Francis, Vadim Kagan, and Andrew Cox.  These products do not have any definite, single date of

creation, but were developed in the early to mid-2000s.  AllAboutMe<sup>TM</sup> was first sold in the

United States in February 2004.   VirtualPortfolio<sup>TM</sup> was first sold in the United States in June

2008.  Both products have been sold in the United States through the present.

Serverside objects to providing a list of customers that purchased or used the products as

irrelevant.  At most, such information might be relevant to issues of damages and/or profits,

which is better dealt with through expert discovery.

### INTERROGATORY NO. 6

*Describe in detail each instance in which any owner of the Asserted Patents has*

*attempted, successfully or unsuccessfully, to license or sell the Asserted Patents, including, but*

*not limited to, the identity of the parties involved in the license or sale, or potential license or*

*sale, any proposed and/or accepted terms of the license or sale, and the circumstances and*

*nature of each such instance.*

## ANSWER NO. 6

Serverside Group Limited ("SGL") has granted a license to the Asserted Patents to Serverside Graphics, Inc. ("SGI").  Serverside has produced a copy of this license at SSCPI0000090-97, from which the requested information may be ascertained.

In addition, Serverside has granted a license to the Asserted Patents to United Solutions Company, Inc., and to Design One Creative, LLC and Team One Credit Union.  Serverside is producing copies of these licenses at SSCPI0004276-4296, from which the requested information may be ascertained.

## INTERROGATORY NO. 7

*If you contend that there exist any secondary considerations of non-obviousness within the meaning of Graham v. John Deere Co., 383 U.S. 1 (1966) with respect to any asserted claim of the Patent-in-Suit, including, without limitation, any allegation of commercial success, long-felt need, attempts by others, failures by others, commercial acquiescence, copying, or "unexpected results," describe in detail the bases for the Serverside Plaintiff's contentions, identify any and all person with knowledge of such matters and the substance of such knowledge, and identify any and all documents relating to, supporting or contradicting such contentions, including but not limited to all documents, things, witnesses, or other evidence upon which the Serverside Plaintiffs will rely to support these contentions.*

## ANSWER NO. 7

In addition to its General Objections, Serverside objects to this Interrogatory as premature, and calling for expert analysis.  Serverside also objects to the Interrogatory as seeking to impose a duty beyond that specified in the Federal or Local Rules.  Further, because discovery is still in its early stages and Defendants have not asserted the bases for any allegation that the

7

Asserted Patents are obvious, it is not possible at this point for Serverside to set forth the bases for any secondary considerations of non-obviousness.

Subject to its objections, Serverside preliminarily states that at least three secondary considerations suggest non-obviousness of the Asserted Patents. (1) The Asserted Patents resolved a long-felt need to be able to reproduce personalized images on consumer goods, such as financial transaction cards, at locations remote from a user. Various prior art systems had attempted to meet this need, but had assorted problems including the time needed for downloads, virus risks, and performance issues over the Internet. The equipment and apparatus of the Asserted Patents met that need by figuring out how to allow such customization over distributed networks via a user-interface, and did not require the downloading of separate software, or the repeated transmission of large image files between client and server, and how to accomplish all of this securely. (2) Products embodying the inventions of the Asserted Patents have achieved significant commercial success, due to the features of the inventions. These products include not only those of Serverside, but also those of Defendants, and of the other parties originally sued in the District of Delaware. (3) Others have copied the Asserted Patents in their products. Defendants were aware of the Asserted Patents' applications at least as of 2008, and copied their inventions in developing Defendants' products that Serverside has accused of infringement. Serverside reserves the right to supplement this list of factors.

Serverside expects that future deposition testimony on non-obviousness and secondary considerations, future expert reports, deposition testimony, and trial testimony on non-obviousness and secondary considerations, and documents and materials that will be cited, referred to, or relied on in such reports or testimony, may all be relevant in response to this interrogatory.

As agent of Plaintiffs, I declare under penalty of perjury under the laws of the United States of America that, to the best of my present knowledge, information and belief, the foregoing answers to interrogatories are true and correct.


Date:  August 16, 2012                          /s/ Anita Rajdev
                                                Anita Rajdev
                                                Group Finance Director

                                                On behalf of Serverside Group Limited and
                                                Serverside Graphics, Inc.

As to objections and reservations of rights:

Date: August 16, 2012

/s/ Hunter D. Keeton
Michael A. Albert
Hunter D. Keeton
600 Atlantic Avenue
Boston, MA  02210-22061
Phone: (617) 646-8000
Fax: (617) 646-8646
malbert@wolfgreenfield.com
hkeeton@wolfgreenfield.com

*Attorneys for Plaintiffs, Serverside Group Limited
and Serverside Graphics, Inc.*

## CERTIFICATE OF SERVICE

I certify that on August 16, 2012, I caused the foregoing document to be served via electronic means by email on counsel for Defendants.

/s/ Hunter D. Keeton
Hunter D. Keeton

10

# EXHIBIT D



**Wolf Greenfield**
SPECIALISTS IN INTELLECTUAL PROPERTY LAW

Hunter Keeton
hkeeton@wolfgreenfield.com
direct dial 617.646.8283

October 11, 2012

<u>**Via Email**</u>

Nicholas W. Short, Esq.
Winston & Strawn, LLP
101 California Street
San Francisco, CA 94111-5802

Re:     *Serverside Group Limited, et al. v. CPI Card Group-Colorado, Inc., et al.*
          Case No. 1:12-cv-00733-PAB-BNB (D. Colo.)
          Discovery Issues
          Our File: S1787.60002US00

Dear Nick:

          This letter responds to your letter to me of October 3, 2012.

          Serverside strongly disagrees with your contention that it has not produced documents or information consistent with its obligations under the Scheduling Order (D.I. 47 at 9-10), the Northern District of California Local Patent Rules as adopted in that Order, and the relevant Federal and Local Rules of Civil Procedure.

          For example, Serverside produced all of the documents and supporting information required with its preliminary infringement contentions on July 20, 2012, even going so far as to amend those contentions at CPI's request on September 14, 2012.

          Regarding the requests for production of documents, subject to its objections Serverside has already produced or will produce documents responsive to each category, to the extent they exist and are not privileged.  Indeed, Serverside's production to date is more than five times the size of CPI's production.  Moreover, as you stated to me on the phone earlier this week, the parties in this case agreed to a rolling production of documents as they are located.  Fact discovery does not close until August 2013, and while Serverside will continue to produce documents promptly over the course of discovery we do not understand the need to produce everything immediately.

          Finally, Serverside has already provided all of the relevant information of which it is presently aware in response to Interrogatories 8 and 9, as discussed below.

          Subject to these points, Serverside provides the following additional information, organized in the same categories as your letter.



Nicholas W. Short, Esq.
October 11, 2012
Page 2

### Preliminary Infringement Contentions and Related Document Production

Using the categories of documents from N.D. Cal. Local 3-2, under Rule 3-2(a) Serverside states that it is not presently aware of any sale, offer for sale, public use of or disclosure of the claimed inventions prior to the date of application for the patents in suit. Serverside therefore is not aware of any documents relating to this category. Should Serverside locate such documents, it will produce them.

Regarding Rule 3-2(b), given the passage of time Serverside is not presently aware of documents evidencing the conception, reduction to practice, design, and development of the claimed inventions that are not reflected in the patents in suit or their file histories. Given that the relevant priority date for the patents is almost ten years ago, additional relevant documents would likely be a decade or more old, which combined with the inventors leaving Serverside means that such documents may no longer exist or no longer be in Serverside's possession. That said, Serverside is searching for any additional documents, and will produce them if located.

You acknowledge that Serverside has produced the file histories required by Rule 3-2(c).

In addition to the documents mentioned in your letter regarding ownership of patent rights under Rule 3-2(d), we direct your attention to the Deed of Agreement produced at SSCPI000098-110. Serverside is searching for any additional documents, and will produce them if located.

Lastly, Serverside has already produced documents relating to the operation of instrumentalities under Rule 3-2(e) at SSCPI0004209-4268. Serverside is searching for additional documents describing these instrumentalities in more detail, and will produce them once located.

### Responses to Document Production Requests

Regarding technical information about AllAboutMe™ and VirtualPortfolio™ (Request No. 1), Serverside has already produced relevant documents at SSCPI0004209-4268, but is searching for additional documents describing these instrumentalities in more detail, and will produce them once located. Regarding sales, revenue and profit information for these products (Request No. 3), Serverside is gathering such information but expect that to take some time. This information also relates solely to damages issues, which are not implicated in the claim construction process presently ongoing. Regarding documents relating to offers to sell or license



Nicholas W. Short, Esq.
October 11, 2012
Page 3

the patents in suit (Request No. 4), we direct your attention to Serverside's answer to Interrogatory No. 6 and the documents referred to there.

### Answers to Interrogatories 8-9

Serverside has set forth its present knowledge and information about the CPI-Sears document in its answers to Interrogatories 8 and 9. We dispute your implication that Serverside is attempting to "suppress" information or is "arous[ing] further suspicion." If Serverside knew the name of the individual from who it received the CPI-Sears document, or the name of the client or potential client, Serverside would have provided those names in its answers. Serverside does not know those names, and so could not provide them.

As Serverside stated in those answers, however, its investigation of this issue is ongoing. If Serverside learns additional information on this topic, it will supplement these answers as is its duty under Rule 26(e). In addition, you might better explore the scope of Serverside's knowledge on this issue at the upcoming deposition of Serverside.

To the extent set forth above, Serverside will attempt to produce any additional relevant documents it locates a reasonable time in advance of the October 29-November 1 deposition dates the parties have been discussing.

### Deficiencies in Defendants' Production

Defendants' own production to date is deficient in multiple respects. As noted above, Defendants have produced far fewer documents that Serverside.

Regarding Defendants' Invalidity Contentions, served August 24, 2012, Northern District of California Local Patent Rule 3-4(a) requires accompanying production of "[s]ource code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality." Defendants' production in this regard was minimal, and certainly did not provide sufficient information to explain how the accused products work. As but one example, we discussed with you earlier this week how neither you nor we can work out from the production so far how Defendants products implement their security features. Moreover, Defendants' contentions completely fail to "separately identify by production number which documents correspond" to this category. Promptly supplement your contentions.


Wolf Greenfield
SPECIALISTS IN INTELLECTUAL PROPERTY LAW

Nicholas W. Short, Esq.
October 11, 2012
Page 4

On Rule 3-4(b), please confirm that Defendants have produced copies all of the prior art cited in their Contentions.

Turning to the responses to Serverside's Document Requests, Defendants have failed to provide sufficient documentation to explain the operation of their accused products (Nos. 1, 3, 8); do not appear to have provided any documents relating to public use, on-sale activity, commercial exploitation, or experimental use relating to the asserted patents (No. 5); have provided no documents relating to sales or damages (Nos. 7, 15); have not made the source code for the accused products available (No. 9), nor provided samples of hardware or cards made using the accused products (Nos. 10-11); have provided no marketing or advertising materials at all (No. 12); have not provided documents relating to any modification of the accused products (No. 13); and have not provided their document destruction and retention policies (No. 16). We expect speedy production of documents responsive to these requests.

Finally, Defendants have failed to provide full and complete answers to several of Serverside's Interrogatories, answers to which we expect prompt supplementation:
- Interrogatory 3 – Defendants have failed to identify who would be knowledgeable about the printing or manufacture their customized financial transaction cards (even failing to identify what entity or entities do so).
- Interrogatory 6 – Defendants have refused to identify anything at all about when they first learned of the asserted patents. Not all such information can reasonably be privileged (for example, the mere fact of receiving a letter informing Defendants of the patents would not be privileged). This refusal appears to be in conflict with Defendants' answer to Interrogatory 18, relating to Defendants' affirmative defense of unclean hands, laches, waiver, and estoppel. Which answer is correct?
- Interrogatory 8 – Defendants have identified bare figures for their gross revenues, net revenues, and profits from the accused products, but have failed to provide any of the underlying information that would allow Serverside to understand the basis for that information, as Defendants agreed to produce in response to Document Request 18.
- Interrogatory 9 – Defendants have refused to provide any response as to the factors driving market demand for the accused products. Such information is discoverable.
- Interrogatory 10 – Defendants' Invalidity Contentions did not assert any basis that the asserted patents are invalid under 35 U.S.C. § 101. Please confirm that Defendants are not contending that the patents are invalid on this ground.


Wolf Greenfield
SPECIALISTS IN INTELLECTUAL PROPERTY LAW

Nicholas W. Short, Esq.
October 11, 2012
Page 5

Please let us know if you have any questions.

Very truly yours,

WOLF, GREENFIELD & SACKS, P.C.

Hunter Keeton

HDK